**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**NICKOLAS E. AMORY,**

**Plaintiff,**

**v.** **Case No. 25-C-613**

**SPENCER P. ELIAS,**
**DERRIK T. MAYE,**
**MICHAEL L. KAHLES,**
**NICHOLAS N. SCHOOL,**
**GREG S. PETERSON, and**
**JAMES SHEA,**

**Defendants.**

---

## DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Nickolas E. Amory is currently housed at the Drug Abuse Correctional Center and representing himself in this 42 U.S.C. § 1983 action against Defendants Spencer P. Elias, Derrik T. Maye, Michael L. Kahles, Nicholas N. School, Greg S. Peterson, and James Shea. Plaintiff is proceeding on a Fourth Amendment claim based on his allegations that Confidential Informant Shea entered his residence without lawful authority at the direction of Elias, Maye, Kahles, School, and Peterson (the Officer Defendants). This matter comes before the court on the Officer Defendants' motion for summary judgment. For the following reasons, the motion for summary judgment will be granted.

## PRELIMINARY MATTERS

Pursuant to the local rules, along with a motion for summary judgment, the moving party is required to file either a statement of material facts to which the parties have stipulated or a statement of proposed material facts as to which the moving party contends there is no material

issue and that entitle it to judgment as a matter of law. Civil L.R. 56(b)(1).[1] The statement of proposed facts must include numbered paragraphs containing short factual statements and specific references to affidavits, declarations, parts of the record, and other supporting materials. Civil L.R. 56(b)(1)(C). The Officer Defendants submitted proposed findings of fact in support of their motion for summary judgment in compliance with the local rules. Dkt. No. 54.

The party opposing a motion for summary judgment must file a response to the moving party's proposed facts to make clear to the court which, if any, of the proposed facts are in dispute. The opposing party must respond to each paragraph. Civil L.R. 56(b)(2)(B). Any uncontroverted fact is deemed admitted for the purpose of deciding summary judgment. Civil L.R. 56(b)(4).

On March 10, 2026, the court entered a notice and order informing Amory that he was required to "respond to each of the proposed facts by agreeing with each proposed fact or explaining why he disagrees with a particular proposed fact." Dkt. No. 55 at 1. The court also explained that "[i]t is not enough for Plaintiff to file only a declaration telling his side of the story. Civil L.R. 56(b)(2)(B) requires Plaintiff to respond to *each* proposed fact." *Id.* at 2. The court warned Amory that if he "does not respond to a proposed fact, the court will assume that Plaintiff does not dispute the proposed fact and will accept the proposed fact as true, regardless of contrary statements in a declaration." *Id.*

In response to the Officer Defendants' motion for summary judgment, Amory did not file a response to the Officer Defendants' proposed findings of fact. Instead, he filed an affidavit objecting to the motion for summary judgment. Accordingly, as Amory was warned, the Officer Defendants' proposed facts are deemed admitted for the purpose of deciding summary judgment.

[1] A copy of Civil Local Rule 56 was provided to Amory along with the scheduling order. *See* Dkt. No. 27 at 8–10.

*See Phoneprasith v. Greff*, No. 21-3069, 2022 WL 1819043 (7th Cir. June 3, 2022) (holding that a district court is entitled to deem unopposed facts admitted under Civil L.R. 56(b)(4) regardless of a non-movant's detailed opposition brief, affidavit, and exhibits); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (same); *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 787 n.2 (7th Cir. 2019) (holding that judges may "strictly enforce summary-judgment rules" because "[e]ven pro se litigants are obliged to follow procedural rules"). With these considerations in mind, the court turns to the substance of the motion for summary judgment.

**BACKGROUND**

Amory is a known drug dealer in Marinette County, Wisconsin, and Menominee County, Michigan. The Northeast Tri-County Drug Enforcement Group created a joint drug taskforce, in coordination with Marinette, Oconto, and Menominee Counties, to investigate the distribution of drugs. At all times relevant, Deputy Elias was employed by the Marinette County Sheriff's Office; Detectives Maye and Kahles were employed by the City of Marinette Police Department; Officer School was an investigator with the Oconto County Sheriff's Office; and Detective Sergeant Peterson was employed by the Menominee County Sheriff's Office.

On May 3, 2022, the Officer Defendants investigated Amory for the distribution of narcotics as part of the Drug Taskforce. Shea is an individual acquainted with Amory and was utilized as a confidential informant for the Drug Taskforce under the designation "CI 318." Using a confidential informant to facilitate a controlled drug buy is routine practice for law enforcement.

Amory resided at an apartment located at 1611 Main Street, Marinette, Wisconsin. On May 3, 2022, Amory offered to sell Shea methamphetamine at the apartment. Shea informed Detective Maye that Amory could get him methamphetamine. Detective Maye only requested that Shea set up the deal with Amory.

Buy 1 was completed in the early afternoon of May 3, 2022, between 1:00 p.m. and 3:00 p.m. Prior to Buy 1, Shea and Amory had conducted drug sales at the apartment between 30 and 40 times. The Drug Taskforce searched Shea before Buy 1 and confirmed that Shea was not in possession of any illicit materials. The Officer Defendants did not instruct Shea to complete Buy 1 inside the apartment or otherwise enter the apartment. During Buy 1, Amory drove Shea to a residence located at 1111 Superior Avenue in Oconto, Wisconsin. Shea sought to purchase a "ball" of methamphetamine during Buy 1. A "ball" is slang for approximately an eighth of an ounce of illicit drugs, most commonly cocaine or methamphetamine. Shea provided Amory with the $250.00 received from Detective Sergeant Peterson to complete Buy 1.

While conducting surveillance at 1111 Superior Avenue in Oconto, Officer School observed Amory's vehicle arrive and park near the residence. Officer School saw a man, who was known to the Drug Taskforce as an illicit drug dealer, approach the driver's side window of Amory's vehicle. Amory then drove Shea back to Amory's apartment where Shea received the pre-purchased methamphetamine from Amory. After leaving the apartment, Shea presented himself to the members of the Drug Taskforce to be searched for the methamphetamine he had just purchased from Amory.

Detective Kahles tested the suspected methamphetamine recovered during Buy 1 using a Thermo Fischer TruNarc scanner. He was also present when the suspected methamphetamine recovered during Buy 1 was weighed. The methamphetamine recovered during Buy 1 weighed 1.5 grams and tested positive for methamphetamine.

Buy 2 occurred later in the afternoon on May 3, 2022, between 4:00 p.m. and 6:00 p.m. and forms the basis for Amory's complaint. The Drug Taskforce searched Shea again and confirmed that Shea was not in possession of any illicit materials before Buy 2. Detective Maye

provided Shea with $220.00 in pre-recorded drug unit funds, and Deputy Elias provided Shea with a recording device. The Officer Defendants did not instruct Shea to complete Buy 2 inside Amory's apartment or otherwise enter the apartment. Shea knocked on Amory's apartment door. He called out to Amory for approximately four minutes before entering the apartment. Upon finding Shea in the apartment, Amory raised no objections, did not ask Shea to leave, and seemed unconcerned about Shea's presence. Amory never sought clarification for Shea's presence at the apartment and instead conversed calmly with Shea about illicit drugs.

During Buy 2, Shea sought the purchase of another "ball" of methamphetamine. Amory sold Shea the methamphetamine. After completing Buy 2 and leaving the apartment, Shea presented himself to members of the Drug Taskforce to be searched for the methamphetamine he had just purchased from Amory. The methamphetamine purchased from Amory during Buy 2 was located on his person.

Detective Kahles tested the suspected methamphetamine the Drug Taskforce recovered during Buy 2 in the same manner in which he had tested the methamphetamine recovered during Buy 1. The methamphetamine recovered by the Drug Taskforce during Buy 2 weighed 2.9 grams and tested positive for methamphetamine.

As a result of Buy 1 and Buy 2, criminal charges were filed against Amory under Wisconsin law. The charges included manufacture/delivery of amphetamine (<=3g). On October 29, 2025, Amory pled guilty to one count of manufacture/delivery of amphetamine (<=3g) as a repeater and was sentenced to five years of initial confinement and five years of extended supervision in Marinette County Circuit Court Case No. 2022-CF-208. *See State v. Amory*, Case No. 22-CF-208 (Marinette Cnty., Wis.), Wis. Circuit Court Access, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2022CF000208&countyNo=38&mode=details (last visited Aug. 7, 2026).

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

The Officer Defendants assert that Amory lacks standing to bring this suit. Article III of the United States Constitution limits the jurisdiction of the federal courts to actual "cases" or "controversies" brought by litigants who demonstrate standing. *Garcia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1063 (7th Cir. 2021). One "landmark" of the case-or-controversy requirement is the doctrine of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted).

The Officer Defendants assert that Amory has not established an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). In this case, Amory alleges that the Officer Defendants directed Shea to unlawfully enter his home in violation of the Fourth Amendment. An unlawful intrusion is an injury to Amory's privacy interest. In short, Amory has standing to bring this action.

The Officer Defendants also argue that Amory's claim is *Heck*-barred. A plaintiff cannot use a § 1983 action to undermine the validity of his convictions. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). "The rule of *Heck v. Humphrey* is intended to prevent collateral attack on a criminal conviction through the vehicle of a civil suit." *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006) (citing *Heck*, 512 U.S. at 484). "To this end, *Heck* bars a plaintiff from maintaining a § 1983 action in situations where 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" *Id.* (quoting *Heck*, 512 U.S. at 487). Based on this record, the court cannot conclude that judgment in Amory's favor would undermine the validity of his conviction. *See Hill v. Murphy*, 785 F.3d 242, 245 (7th Cir. 2015) (noting that Fourth Amendment claims are "rarely" barred by the principle of *Heck v. Humphrey*). Nevertheless, the court finds that the Officer Defendants are entitled to summary judgment on Amory's Fourth Amendment claim as a matter of law.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. At the Fourth Amendment's "very core . . . stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion." *Lange v. California*, 594 U.S. 295, 303 (2021) (internal quotation marks and citation omitted).

As an initial matter, Amory has not shown that Shea acted as an agent of the government when he entered Amory's apartment. The "two critical factors in the 'instrument or agent' analysis are whether the government knew of and acquiesced in the intrusive conduct and whether the private party's purpose in [the intrusive conduct] was to assist law enforcement agents or to further [his] own ends." *United States v. Shahid*, 117 F.3d 322, 325 (7th Cir. 1997) (internal quotation marks and citation omitted). "Other useful criteria are whether the private actor acted at the request of the government and whether the government offered the private actor a reward." *Id.* (citations omitted). In this case, it is undisputed that the Officer Defendants did not instruct Shea to complete the drug buys inside Amory's apartment or otherwise enter the apartment. Instead, Shea entered the apartment to complete the drug buy after he had knocked on the door for several minutes with no response. The Officer Defendants did not know of and acquiesce in the intrusive conduct. Therefore, Shea was not a government agent when he entered Amory's apartment.

Even if Shea were a government agent, Amory consented to Shea's entry into the apartment to conduct the sale of methamphetamine. Upon seeing Shea in the apartment, Amory did not object to Shea being in his home and completed the drug buy. When "someone with authority to do so consents to the entry" of a government agent into his home, that entry is reasonable and does not violate the Fourth Amendment. *United States v. Walls*, 225 F.3d 858, 862 (7th Cir. 2000) (citation omitted); *United States v. Scherer*, 673 F.2d 176, 182 (7th Cir. 1982) ("A government

agent may obtain an invitation onto property by misrepresenting his identity, and if invited, does not need probable cause nor warrant to enter so long as he does not exceed the scope of his invitation."). Because Amory consented to Shea's entry into the apartment to complete the sale of illicit drugs, Shea's entry did not violate the Fourth Amendment. For these reasons, the Officer Defendants are entitled to summary judgment on Amory's Fourth Amendment claim. The Officer Defendants also argue that they are entitled to qualified immunity, but because the court is granting summary judgment in their favor on the merits, it need not address that argument.

Based on the foregoing, Defendants Deputy Elias, Detective Maye, Detective Kahles, Officer School, and Detective Sergeant Peterson's motion for summary judgment will be granted and Amory's claims against them will be dismissed. Further, pursuant to Federal Rule of Civil Procedure 56(f), the court provides Amory notice of its intention to grant summary judgment in favor of Shea, even though he has not filed a responsive pleading in this case. As noted, the record establishes that Shea is entitled to summary judgment as a matter of law. The Court will allow Amory fourteen days to respond to this decision, at which time it will enter summary judgment in Shea's favor and will dismiss the case.

## CONCLUSION

For these reasons, Defendants Deputy Elias, Detective Maye, Detective Kahles, Officer School, and Detective Sergeant Peterson's motion for summary judgment (Dkt. No. 50) is **GRANTED**. Amory's claims against them are dismissed. The clerk's office is directed to terminate them from this action.

Pursuant to Federal Rule of Civil Procedure 56(f), Amory is hereby given notice of the court's intention to grant summary judgment in favor of Shea for the reasons explained in this

decision. Amory may respond to this decision within fourteen days, after which the court will enter summary judgment for Shea and will dismiss this case.

**SO ORDERED** at Green Bay, Wisconsin this 7th day of August, 2026.

William C. Griesbach
United States District Judge